UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ISABEL GONZALEZ,                    )  Case No. CV 04-7817-RC
                                    )
                Plaintiff,          )
                                    )
vs.                                 )  OPINION AND ORDER
                                    )
JO ANNE B. BARNHART,                )
Commissioner of the Social          )
Security Administration,            )
                                    )
                Defendant.          )
_____   )

     Plaintiff Isabel Gonzalez filed a complaint on September 21,
2004, seeking review of the Commissioner's decision denying her
application for disability benefits.  The Commissioner answered the
complaint on January 5, 2005, and the parties filed a joint
stipulation on July 26, 2005.


                            **BACKGROUND**

                                **I**

     On April 5, 1994 (protective filing date), plaintiff applied for
disability benefits under the Supplemental Security Income ("SSI")
program of Title XVI of the Social Security Act ("the Act"), claiming

an inability to work since June 7, **1983**, due to cervical, thoracic and lumbosacral spine sprains.  Certified Administrative Record ("A.R.") 102-08, 130.[1]  The plaintiff's application was denied initially on August 8, 1994, and was denied again on January 9, 1995, following reconsidera-tion.  A.R. 109-15, 120-21.  The plaintiff then requested an adminis-trative hearing, which was held before Administrative Law Judge Barry S. Brown ("ALJ Brown") on June 4, 1996.  A.R. 122-23.  On July 26, 1996, ALJ Brown issued a decision finding plaintiff is not disabled.  A.R. 253-67.  The plaintiff appealed this decision to the Appeals Council, which, on April 22, 1998, granted review and remanded the matter for further proceedings.  A.R. 270-88.

On January 22, 1999, ALJ Brown issued a second decision again finding plaintiff is not disabled.  A.R. 327-39.  The plaintiff again sought review from the Appeals Council, which again granted review, and this time remanded the matter for hearing before a different administrative law judge.  A.R. 347-56.

On July 24, 2001, an administrative hearing was held before Administrative Law Judge Steven Chaffin ("the ALJ"), A.R. 396-419, who issued a decision on August 13, 2001, finding plaintiff is not disabled.  A.R. 19-30.  The plaintiff appealed this decision to the Appeals Council, which denied review on March 26, 2004.  A.R. 11-18, 364-65.

---

[1]  Plaintiff previously applied for SSI benefits on April 12, 1993 (protective filing date); however, this application was initially denied, and was denied again on October 19, 1993, following reconsideration.  A.R. 50-54, 58-66.  Plaintiff did not seek an administrative hearing.

## II

The plaintiff was born in Bolivia on July 3, 1950, and she has resided in the United States since March 15, 1981. A.R. 50, 102, 209, 404. The plaintiff has a Bolivian high school education and teaching credential and has previously worked in Bolivia as an elementary school teacher and in the United States as a teacher's aide. A.R. 70, 134, 209-10.

The plaintiff initially injured her back on June 7, 1983, A.R. 158, 177, 208, and she has not worked since then. She was treated in 1986-87 at Casa Colina Hospital, where she was diagnosed with chronic vertebrogenic low back pain, muscular tightness of the trapezius bilaterally and depression. A.R. 158-62. Between November 4 and December 5, 1986, plaintiff was admitted to Casa Colina, and treated with physical therapy, biofeedback, individual and group psycho-therapy, and vocational counseling, A.R. 152-54, 163-71, and between December 16, 1986, and January 8, 1987, plaintiff received physical and psychological treatment, which improved her condition. A.R. 150-51. Subsequently, plaintiff received further treatment at Casa Colina from January 4, 2000, to March 2, 2004. A.R. 369-70, 373-80, 386-95.

On August 20, 1987, H. Leon Brooks, M.D., an orthopedic surgeon, examined plaintiff and diagnosed her with possible disc herniation of the lumbosacral spine, with neuropathy[2] referred to both legs. A.R.

---

[2] Neuropathy is "a functional disturbance or pathological change in the peripheral nervous system, sometimes limited to noninflammatory lesions as opposed to those of neuritis; the etiology may be known or unknown." Dorland's Illustrated Medical Dictionary at 1212.

1   177-84.  Cervical spine x-rays showed a slight irregularity affecting

2   the joints of Luschka[3] between C5 and C6, a decrease in disc space

3   between C5 and C6, a limitation of mobility on flexion and extension,

4   and evidence of some intervertebral foraminal encroachment between C5

5   and C6, A.R. 182; thoracic spine x-rays showed spondylotic[4] changes

6   affecting the upper disc spaces, id.; and lumbosacral spine x-rays

7   revealed anterior traction spur formation in the superior corner of

8   the body of L5, impingement of the superior articular process of S1

9   into the pars interarticularis at L5, and straightening of the normal

10  lumbar lordosis.  Id.  Dr. Brooks concluded plaintiff was permanent

11  and stationary, unable to work at her prior occupation, and should be

12  limited to light work with no repeated flexion and extension of the

13  cervical spine or work above shoulder level.  A.R. 183-84.

14

15     On October 2, 1987, Benjamin D. Selfridge, Ph.D., a clinical

16  psychologist, examined plaintiff, administered psychological testing,

17  and diagnosed plaintiff with an atypical somatoform disorder with

18  conversion, depression and marital problem features and a mixed

19  personality disorder with dependent and passive/aggressive features.

20  A.R. 207-15.  Dr. Selfridge concluded plaintiff was permanent and

21  stationary with a "greater than slight, but less than moderate" mental

22

23     [3]  The joints of Luschka are "a series of jointlike
    structures at the lateral edges of the vertebral bodies from
24  vertebra C3 to T1, forming small spurlike lips at the upper
    surface, covered with cartilage, and containing a capsule filled
25  with fluid."  Dorland's Illustrated Medical Dictionary, 931 (29th
    ed. 2000).
26

27     [4]  Spondylosis is "a general term for degenerative changes
    due to osteoarthritis."  Dorland's Illustrated Medical Dictionary
28  at 1684.

1  impairment.  A.R. 214-15.

2

3       On December 4, 1987, Donald J. Feldman, M.D., a psychiatrist,

4  examined plaintiff and diagnosed her with a somatoform disorder,

5  depression and anxiety.  A.R. 216-29.  Dr. Feldman concluded

6  plaintiff's symptoms were strongly suggestive of hypochondriacal

7  disorder – somatoform disorder – hypochondriasis, and that although

8  there was mild anxiety and depression present, those conditions did

9  not contribute significantly to plaintiff's difficulties, and formal

10 psychiatric care will be of no benefit.  A.R. 227-28.  Dr. Feldman

11 concluded plaintiff was permanent and stationary, with a "very slight"

12 impairment in her ability to maintain a work pace appropriate to a

13 given work load, relate to other people beyond giving and receiving

14 instructions, influence people, make generalizations, evaluations, or

15 decisions without immediate supervision, accept and carry out

16 responsibility for direction, control, and planning, and perform

17 complex or varied tasks, and "no" impairment in her ability to

18 comprehend and follow instructions and perform simple and repetitive

19 tasks.  A.R. 228-29.

20

21      On June 21, 1993, Seung Hyuh Kim, M.D., an internist, examined

22 plaintiff and diagnosed her with musculoskeletal chest pain and

23 chronic low back strain.  A.R. 186-94.  Lumbar spine x-rays were

24 normal.  A.R. 192.  Dr. Kim concluded plaintiff could occasionally

25 lift and/or carry up to 20 pounds, frequently lift and/or carry up to

26 10 pounds, can stand and/or walk for at least 2 hours in an 8-hour

27 day, and can sit for less than 6 hours in an 8-hour day.  A.R. 193-94.

28 //

On July 14, 1994, Gabriel Fabella, M.D., examined plaintiff and diagnosed her with mild lateral epicondylitis[5] on the left and low back pain, with well preserved spinal mobility without radiculopathy. A.R. 195-200.  Lumbar spine x-rays revealed straightening of the lumbar lordosis in an otherwise normal study.  A.R. 200.

Beginning in 1995, plaintiff received treatment at the Urgent Care Center in Montclair, where she was initially diagnosed with chronic cervical, thoracic and lumbosacral spine strains, with a recent exacerbation of symptoms and placed on light duties with limitations of no lifting more than 5 pounds, and no repetitive bending or stooping or prolonged standing for more than 3 hours.  A.R. 202-05, 289, 292, 300-04, 312-19.  Subsequently, plaintiff was diagnosed with C6-7 and L3-4 disc herniations and placed on temporary total disability.  A.R. 202.  The plaintiff was reevaluated at this facility at some point in 1996, and placed on light duties with limitations of no lifting more than 10 pounds, and no repetitive bending or stooping or prolonged standing or sitting.  A.R. 289.  A cervical spine MRI taken February 25, 1998, revealed a 2-mm. disc bulge slightly left of the midline at C5-C6 and a 2-3-mm. broad-based, central disc bulge at C6-7.  A.R. 318.  The plaintiff was reevaluated on June 12, 1998, diagnosed with chronic neck and back pain, and allowed to work at modified duties with limitations of no lifting more than 10 pounds, no repetitive bending or stooping or prolonged standing, and no overhead lifting.  A.R. 292, 314.

---

[5]  Epicondylitis is "inflammation of the epicondyle or of the tissues adjoining the epicondyle of the humerus."  Dorland's Illustrated Medical Dictionary at 605.

1    On January 23, 1996, George S. Watkin, M.D., an orthopedist,

2    examined plaintiff and diagnosed her with a cervical spine

3    sprain/strain superimposed over disc protrusion at C5-C6 with left-

4    sided radicular symptomatology, and a thoracolumbar spine

5    strain/sprain superimposed over disc protrusions at L3-L4, L4-L5, and

6    L5-S1.  A.R. 230-46.  Dr. Watkin reviewed various MRIs of the cervical

7    and lumbar spine taken in August 1995, A.R. 237, and concluded

8    plaintiff was permanent and stationary and should be prophylactically

9    restricted to work precluding heavy lifting and repeated bending and

10   stooping.  A.R. 238-39.

11

12   Medical expert Lloyd Tom, M.D., an orthopedic surgeon, testified

13   at the administrative hearing that plaintiff has spinal stenosis[6] of

14   the neck and lumbar spine, which does not meet or equal a listed

15   impairment.  A.R. 363, 399-404.  Dr. Tom opined plaintiff can

16   occasionally lift and/or carry up to 25 pounds, bend, squat, crawl,

17   climb, and reach; frequently lift and/or carry up to 20 pounds; can

18   sit, stand and/or walk for approximately 1 hour each at a time and 6

19   hours each during an 8-hour work day; is moderately limited in her

20   ability to drive automotive equipment, and be exposed to marked

21   changes in temperature and humidity and dust, fumes and gases; and

22   cannot work at unprotected heights or be around moving machinery.

23   A.R. 363.

24

25      [6]  Spinal stenosis is "narrowing of the vertebral canal,
26   nerve root canals, or intervertebral foramina of the lumbar spine
     caused by encroachment of the bone upon the space; symptoms are
27   caused by compression of the cauda equina and include pain,
     paresthesias, and neurogenic claudication."  Dorland's
28   Illustrated Medical Dictionary at 1698.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine whether the decision is supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720; Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996). //

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. § 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If not, in the **Second Step,** the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. § 416.920(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 416.920(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. § 416.920(f). If not, in **Step Five,** the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(g).

Where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments. Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914 (9th Cir. 1998) (per curiam). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. § 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering

four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. § 416.920a(c)(2-4).  Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 C.F.R. § 416.920a(d).  Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing.  20 C.F.R. § 416.920a(d)(2).  Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a(c)(3)]."  20 C.F.R. § 416.920a(d)(3), (e)(2).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.  (Step One).  The ALJ then found plaintiff has spinal stenosis, which is a severe impairment; however, she does not have a severe mental impairment in that she has "no more than mild restrictions in daily activities, mild difficulties in maintaining social functioning, mild difficulties maintaining concentration, persistence or pace, and there have been no episodes of decompensation."  (Step Two).  Further, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment.  (Step Three).  The ALJ next concluded plaintiff has no vocationally relevant work within the past 15 years. (Step Four).  Finally, the ALJ applied Rules 202.14 and 202.21 of the Medical-Vocational Guidelines and found plaintiff is not disabled.

1 (Step Five).

2

3                                    **IV**

4      A claimant's residual functional capacity ("RFC") is what she can

5 still do despite her physical, mental, nonexertional, and other

6 limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001);

7 Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here,

8 the ALJ concluded plaintiff has the RFC to perform the full range of

9 light work.[7]  A.R. 29.  However, plaintiff contends this finding is

10 not supported by substantial evidence because the ALJ improperly

11 concluded she is not a credible witness.  Jt. Stip. at 5:8-12.  There

12 is no merit to this claim.

13

14      The plaintiff testified at the administrative hearing that she

15 experiences pain on the left side of her head and shoulder, neck pain,

16 back pain, left arm pain extending to her fingers and causing cramps,

17 and problems with her left leg; however, her headaches are controlled

18 with medication.  A.R. 411-12, 414.  She stated she can only lift 5

19 pounds, she can sit for up to half an hour before she has to change

20 positions, and she cannot stand for more than 3 hours.  A.R. 144, 410-

21

22      [7]  Under Social Security regulations, "[l]ight work involves
lifting no more than 20 pounds at a time with frequent lifting or
23 carrying of objects weighing up to 10 pounds.  Even though the
weight lifted may be very little, a job is in this category when
24 it requires a good deal of walking or standing, or when it
involves sitting most of the time with some pushing and pulling
25 of arm or leg controls.  To be considered capable of performing a
full or wide range of light work, you must have the ability to do
26 substantially all of these activities."  20 C.F.R. § 416.967(b).
"[T]he full range of light work requires standing or walking for
27 up to two-thirds of the workday."  Gallant v. Heckler, 753 F.2d
1450, 1454 n.1 (9th Cir. 1984); SSR 83-10, 1983 WL 31251, *6.
28

11. The plaintiff testified that certain medications make her dizzy, but the dizziness wears off when the medication does.  A.R. 412.

Once a claimant has presented objective evidence she suffers from an impairment that could cause pain or other nonexertional limitations, the ALJ may not discredit the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).  Rather, if the ALJ finds the claimant's subjective complaints are not credible, he must make specific findings to support that conclusion.  Moisa, 367 F.3d at 885; Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001).  Furthermore, if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ found plaintiff is not "entirely credible" for several reasons, including that her daily activities are "typical of most individuals" in that she is able to perform light household chores, weekly grocery shopping, cooking, she gets along with others, watches television, reads, has no difficulties concentrating, and manages her own finances.  A.R. 25-26, 76-79.  "An ability to perform such activities may be seen as inconsistent with the presence of a condition which would preclude all work activity." Curry v. Sullivan,

1    925 F.2d 1127, 1130 (9th Cir. 1990); <u>see also Burch</u>, 400 F.3d at 680-
2    81 (affirming ALJ's adverse credibility determination based, in part,
3    on claimant's daily activities, including caring for own needs,
4    cooking, cleaning, shopping, interacting with nephew and boyfriend,
5    and managing her and nephew's finances); <u>Orteza v. Shalala</u>, 50 F.3d
6    748, 750 (9th Cir. 1995) (per curiam)(claimant's ability to "perform[]
7    various household chores such as cooking, doing the dishes, going to
8    the store, visiting relatives, and driving" support ALJ finding
9    claimant's complaints of pain and fatigue were exaggerated and did not
10   prevent him from performing light work).

11

12       The ALJ also found that despite complaints for 20 years of
13   debilitating pain, "records do not show any significant atrophy or
14   muscle wasting in any extremity, nor is there any evidence of
15   significant weight change."  A.R. 26.  This, too, is a proper basis on
16   which to rest an adverse credibility finding against plaintiff.  <u>See</u>
17   <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1166 (9th Cir. 2001) (rejecting
18   claimant's excess pain testimony based, in part, on no evidence of
19   disuse atrophy or severe weight loss due to loss of appetite from
20   pain); <u>Meanel</u>, 172 F.3d at 1115 (affirming ALJ's rejection of
21   claimant's excess pain testimony based, in part, on claimant not
22   exhibiting muscular atrophy or any other physical signs of
23   inactivity).

24

25       Further, in making the adverse credibility determination, the ALJ
26   found plaintiff's complaints were contrary to the "mild" objective
27   findings in the record.  A.R. 26.  "While subjective pain testimony
28   cannot be rejected on the sole ground that it is not fully

1 | corroborated by objective medical evidence, the medical evidence is

2 | still a relevant factor in determining the severity of the claimant's

3 | pain and its disability effects." Rollins v. Massanari, 261 F.3d 853,

4 | 857 (9th Cir. 2001); see also Burch, 400 F.3d at 681 ("Although lack

5 | of medical evidence cannot form the sole basis for discounting pain

6 | testimony, it is a factor that the ALJ can consider in his credibility

7 | analysis.").

8 |

9 |     Additionally, the ALJ properly found as a basis to reject

10 | plaintiff's testimony, that plaintiff's symptoms have been managed

11 | conservatively and she does not utilize an inordinate amount of pain

12 | medication. See Meanel, 172 F.3d at 1114 (claimant's complaint "she

13 | experienced pain approaching the highest level imaginable was

14 | inconsistent with the 'minimal, conservative treatment' that she

15 | received"); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)

16 | (ALJ properly found claimant's excess pain testimony not credible

17 | because, among other reasons, claimant's treating physician prescribed

18 | only conservative treatment, "suggesting a lower level of both pain

19 | and functional limitation").

20 |

21 |     Finally, the ALJ found that although plaintiff complained that an

22 | unidentified medication causes her dizziness, "those allegations are

23 | notably absent from the records of any treating or examining

24 | physician[,]" and plaintiff continues to drive without any physician

25 | placing any medical restrictions upon her driver's license. A.R. 26.

26 | This, too, is a proper basis for rejecting plaintiff's testimony

27 | regarding the alleged side effects of her medication, and, thus,

28 | finding plaintiff is not credible. See Thomas v. Barnhart, 278 F.3d

947, 960 (9th Cir. 2002)(ALJ properly rejected claimant's claimed side effects, including dizziness and difficulties in concentration, based on finding plaintiff lacked credibility); <u>Miller v. Heckler</u>, 770 F.2d 845, 849 (9th Cir. 1985) (ALJ properly rejected claim that use of prescription narcotics disabled claimant when he "produced no clinical evidence showing that narcotics use impaired his ability to work").

Based on the foregoing, "[t]he ALJ gave specific, clear and convincing reasons for discounting [plaintiff's] testimony." <u>Thomas</u>, 278 F.3d at 959; <u>Burch</u>, 400 F.3d at 681.

V

The plaintiff also contends the ALJ failed to develop the record by not requesting a consultative mental examination. Specifically, plaintiff claims a psychiatric consultative examination was required because the medical expert who testified at the administrative hearing, Dr. Lloyd Tom, opined plaintiff "needs a mental exam." Jt. Stip. at 3:19-22.

As an initial matter, it is indisputable that the ALJ "has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered[,]" <u>Smolen</u>, 80 F.3d at 1288 (internal quotation marks and citation omitted); <u>Webb v. Barnhart</u>, 433 F.3d 683, 687 (9th Cir. 2005), and this duty exists regardless of whether the claimant is represented by counsel. <u>Celaya v. Halter</u>, 332 F.3d 1177, 1183 (9th Cir. 2003); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001). Moreover, this duty is "heightened where the claimant may be mentally ill and thus unable to protect her own

15

interests." Tonapetyan, 242 F.3d at 1150.  However, only "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'"  Id. (citations omitted); Webb, 433 F.3d at 687.  Moreover, although "the Commissioner 'has broad latitude in ordering a consultative examination[,]'" Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001) (quoting Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 778 (9th Cir. 1990)), doing so is a discretionary act, Sims v. Apfel, 224 F.3d 380, 381-82 (5th Cir. 2000) (per curiam), which is only required "when such an evaluation is necessary for [the ALJ] to make an informed decision." Haley v. Massanari, 258 F.3d 742, 749 (8th Cir. 2001); Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988).  For a court to find the ALJ should have required a consultative examination, there must be "some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision." Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997).

Here, the record does not support plaintiff's claim that the ALJ was required to order a consultative mental examination of plaintiff because, contrary to plaintiff's contention, the medical expert who testified at the administrative hearing, Dr. Tom, did not testify equivocally and did not recommend a mental examination of plaintiff. Instead, Dr. Tom, who is an orthopedic surgeon, simply declined to comment on any "psychiatric aspects" involved in plaintiff's claim. A.R. 400.  Therefore, there was no Tonapetyan error.[8]

---

[8] The holding in Tonapetyan requires that when an ALJ relies on the equivocal testimony of a medical expert who

The plaintiff also contends a consultative mental examination of her was required because she testified at the administrative hearing that she experiences depression when she has a lot of pain.[9]  <u>See</u> Jt. Stip. at 5:11-18, 10:10-11:3.  However, a claimant's "[i]solated and unsupported comments . . . are insufficient" to require that the ALJ order a consultative examination.  <u>Hawkins</u>, 113 F.3d at 1167. Moreover, plaintiff did not claim a disabling mental impairment in her application for SSI benefits, A.R. 102-08, 130, and the evidence before the ALJ did not show a severe mental impairment.  Indeed, no treating or examining physician diagnosed plaintiff with depression prior to the date of her application, April 5, 1994, A.R. 102-08,[10] and the medical evidence merely shows plaintiff was prescribed Wellbutrin and Celexa for short periods of time for an unspecified sleep disturbance, which resolved.  A.R. 359-60, 375.  Therefore, the

---

recommends a more detailed medical report, the ALJ must order a consultative examination.  <u>Tonapetyan</u>, 242 F.3d at 1150-51.

[9]  The plaintiff initially testified she does not experience depression.  A.R. 413.  Evidently dissatisfied with this answer, plaintiff's attorney asked plaintiff several more times whether she currently has depression before eliciting the answer:  "When I have a lot of pain, yes. . . ."  A.R. 414.

[10]  Although plaintiff was initially diagnosed with depression when treated at Casa Colina in 1986, A.R. 158-62, she was not again diagnosed with depression during her treatment at this facility between 2000 and 2004.  A.R. 369-70, 373-80, 386-95.  Furthermore, although Dr. Selfridge diagnosed plaintiff with a severe mental problem in 1987, A.R. 207-15, the ALJ rejected this opinion, A.R. 25, and plaintiff does not challenge this finding.  Finally, Dr. Feldman, a psychiatrist who examined plaintiff more recently than Dr. Selfridge, found plaintiff had "mild" depression and anxiety, these conditions did not significantly contribute to her condition, formal psychiatric care would not benefit her, and, from a psychiatric viewpoint, she has, at most, "very slight" impairments in her ability to perform work-related activities.  A.R. 216-29.

ALJ did not fail to develop the record by not ordering a consultative mental examination of plaintiff.  <u>Hawkins</u>, 113 F.3d at 1165; <u>Diaz</u>, 898 F.2d at 778.

**VI**

At Step Five, the burden shifts to the Commissioner to show the claimant can perform other jobs that exist in the national economy. <u>Pinto v. Massanari</u>, 249 F.3d 840, 844 (9th Cir. 2001); <u>Harman v. Apfel</u>, 211 F.3d 1172, 1180 (9th Cir.), <u>cert.</u> <u>denied</u>, 531 U.S. 1038 (2000).  To meet this burden, the Commissioner "must 'identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite her identified limitations.'" <u>Meanel</u>, 172 F.3d at 1114 (quoting <u>Johnson</u>, 60 F.3d at 1432).  There are two ways for the Commissioner to meet this burden:  "(1) by the testimony of a vocational expert, or (2) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2."[11]  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1099 (9th Cir. 1999); <u>Osenbrock</u>, 240 F.3d at 1162.

//

//

---

[11]  The Grids are guidelines setting forth "the types and number of jobs that exist in the national economy for different kinds of claimants.  Each rule defines a vocational profile and determines whether sufficient work exists in the national economy.  These rules represent the [Commissioner's] determination, arrived at by taking administrative notice of relevant information, that a given number of unskilled jobs exist in the national economy that can be performed by persons with each level of residual functional capacity." <u>Chavez v. Dep't of Health & Human Servs.</u>, 103 F.3d 849, 851 (9th Cir. 1996) (citations omitted).

1    Here, the ALJ applied Rules 202.21[12] and 202.14[13] of the Grids to

2    determine plaintiff is not disabled.  A.R. 28-30.  However, plaintiff

3    contends this finding is not supported by substantial evidence because

4    the ALJ erroneously found she is able to communicate in English.  A.R.

5    23, 28.[14]  There is no merit to this claim.

6

7    The Grids correlate a claimant's age, education, previous work

8    experience, and RFC to find whether a claimant is disabled or not

9    disabled.  Tackett, 180 F.3d at 1101.  Literacy in English is a

10   component of education under the Grids.  Silveira, 204 F.3d at 1261;

11   Chavez, 103 F.3d at 852; see also 20 C.F.R. § 416.964(b) ("The term

12   education also includes how well you are able to communicate in

13   _____

14   [12] Rule 202.21 provides that a younger individual who is a
     high school graduate or more, who has performed skilled or
15   semiskilled work in which the skills are nontransferable, and who
     is able to perform light work, is not disabled.  20 C.F.R. Pt.
16   404, Subpt. P, App. 2, Rule 202.21.  A younger individual is an
     individual under the age of 50.  20 C.F.R. § 416.963(c).
17

18   [13] Rule 202.14 provides that a person closely approaching
     advanced age, whose prior work experience is skilled or
19   semiskilled with skills not transferable, who is a high school
     graduate or more, and who is able to perform light work is not
20   disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.14.  A
     person "closely approaching advanced age" is an individual
21   between the ages 50 and 54.  20 C.F.R. § 416.963(d).

22   [14] If plaintiff is correct, she would be entitled to
     disability benefits beginning on her 50th birthday under Rule
23   202.09, which provides that an individual closely approaching
     advanced age, whose prior work experience is unskilled or none,
24   who is illiterate or unable to communicate in English, and who is
     able to perform light work is disabled.  20 C.F.R. Pt. 404,
25   Subpt. P, App. 2, Rule 202.09.  The ALJ found plaintiff has a
     skilled or semiskilled work history with no transferable skills,
26   A.R. 28-29, which is "equivalent to an unskilled work history."
27   Silveira v. Apfel, 204 F.3d 1257, 1261 (9th Cir. 2000) (per
28   curiam).

1   English since this ability is often acquired or improved through
2   education.").  A claimant is "'unable to communicate in English' if
3   [she] is either illiterate in English or unable to communicate in
4   English or both." Silveira, 204 F.3d at 1261; see also 20 C.F.R. §
5   416.964(b)(1) ("Illiteracy means the inability to read or write
6   . . . a simple message such as instructions or inventory lists even
7   though the person can sign his or her name.  Generally, an illiterate
8   person has had little or no formal schooling."); 20 C.F.R. §
9   416.964(b)(5) ("Since the ability to speak, read and understand
10  English is generally learned or increased at school, we may consider
11  this an educational factor.  Because English is the dominant language
12  of the country, it may be difficult for someone who doesn't speak and
13  understand English to do a job, regardless of the amount of education
14  the person may have in another language.  Therefore, we consider a
15  person's ability to communicate in English when we evaluate what work,
16  if any, he or she can do. It generally doesn't matter what other
17  language a person may be fluent in.").  The Commissioner bears the
18  burden of establishing plaintiff's literacy and ability to communicate
19  in English.  Silveira, 204 F.3d at 1261; Chavez, 103 F.3d at 851.
20
21      The plaintiff testified at the administrative hearing that she
22  can speak English "but not thoroughly[,]" and she cannot write
23  English.  A.R. 405, 407.  However, the ALJ found this testimony
24  "implausible," noting:  plaintiff has lived in the United States for
25  21 years; plaintiff is a United States citizen, which requires she
26  have "an understanding of the English language, including an ability
27  to read, write, and speak words in ordinary usage in the English
28  //

1  language[,]" 8 U.S.C. § 1423(a)(1); 8 C.F.R. § 312.1(a);[15] cf.

2  Soberal-Perez v. Heckler, 717 F.2d 36, 42 (2d Cir. 1983) ("[T]hose who

3  wish to become naturalized United States citizens must learn to read

4  English."), cert. denied, 466 U.S. 929 (1984);[16] plaintiff previously

5  reported she is able to speak English; and plaintiff took a six-month

6  English language course.  A.R. 23.  These findings are supported by

7  substantial evidence, including other parts of plaintiff's testimony,

8  A.R. 405, 407, plaintiff's report to her physician that she took an

9  English course soon after moving to the United States, A.R. 160, and a

10 Social Security case worker's noted observations of plaintiff during a

11 personal interview with plaintiff.  See A.R. 136-37.  Therefore, the

12 ALJ's determination that plaintiff is neither illiterate nor unable to

13 communicate in English is supported by substantial evidence.  Serra v.

14 Sullivan, 762 F. Supp. 1030, 1035 (W.D. N.Y. 1991); Duran v. Shalala,

15 //

16 //

17

18   [15]  Indeed, the ability of an applicant for citizenship to
     read and write English is tested using books "written at the
19   elementary literacy level[,]" and the applicant is required to
     provide a writing sample.  8 C.F.R. § 312.1(c).  It is reasonable
20   to assume, as the ALJ did, that an applicant who is able to
     complete these tasks would be able to write the "simple message
21   such as instructions or inventory lists" necessary to be
     considered literate for Social Security purposes.  20 C.F.R. §
22   416.964(b)(1).
23
     [16]  Although there are exceptions to the English language
24   requirement for citizenship, see 8 U.S.C. § 1423(b), 8 C.F.R. §
     312.1(b), including an exception for "any person who is unable,
25   because of a medically determinable physical or mental impairment
     or combination of impairments which has lasted or is expected to
26   last at least 12 months, to demonstrate an understanding of the
     English language[,]" 8 C.F.R. § 312.1(b)(3), plaintiff presented
27   no evidence any such exemption applied to her despite being given
     the opportunity to do so.  See A.R. 409.
28

1  1994 WL 408186, *4-5 (C.D. Ill.).[17]

2

3                                   **VII**

4      Finally, plaintiff conclusorily asserts she was denied due

5  process because of the ALJ's "possibl[e] hostility and constant

6  interruption of witnesses."  Jt. Stip. at 12:22-13:1.  There is no

7  merit to this claim, either, since plaintiff has not shown that "the

8  ALJ's behavior, in the context of the whole case, was 'so extreme as

9  to display clear inability to render fair judgment.'"  Rollins, 261

10  F.3d at 858 (citation omitted).  In fact, plaintiff has not identified

11  a single instance supporting her bias claim; thus, plaintiff has not

12  met her burden.  Id. ("'[E]xpressions of impatience, dissatisfaction,

13  annoyance, and even anger, that are within the bounds of what

14  imperfect men and women . . . sometimes display' do not establish

15  bias." (quoting Liteky v. United States, 510 U.S. 540, 555-56, 114

16  S.Ct. 1147, 127 L.Ed.2d 474 (1994))); Verduzco v. Apfel, 188 F.3d

17  1087, 1089 (9th Cir. 1999) (ALJ did not display impermissible bias in

18  finding it hard to believe claimant, who had been in the United States

19  for thirty years, spoke little or no English when "[n]othing in the

20  record indicates that the ALJ harbored any prejudice or bias against

21  _____

22      [17]  The plaintiff also contends the ALJ erred in refusing to
   allow her daughter to testify regarding plaintiff's English
23  capability and disability.  Jt. Stip. at 11:9-15.  Any such error
   was harmless, however, since such evidence would have been
24  cumulative of plaintiff's testimony, see A.R. 418-19, as well as
   other evidence in the record.  See Burch, 400 F.3d at 679 ("A
25  decision of the ALJ will not be reversed for errors that are
   harmless."); Orcutt v. Barnhart, 2005 WL 2387702, *9-10 (C.D.
26  Cal.) (Any error in failing to specifically discuss third-party
   questionnaire was harmless "when that testimony does little more
27  than corroborate plaintiff's testimony and adds nothing of
   substance to the record. . . .").
28

1  non-English speakers, Spanish speakers in particular, or even against

2  people who come to the United States and fail to learn English";

3  rather, "[t]he ALJ's incredulity in the face of the [claimant's] claim

4  not to speak English just reflects the ALJ's finding that the

5  [claimant's] testimony in general was less than entirely truthful.").

6

7                                  **ORDER**

8      IT IS ORDERED that: (1) plaintiff's request for relief is denied;

9  and (2) the Commissioner's decision is affirmed, and Judgment shall be

10  entered in favor of defendant.

11

12  DATE:  __April 18, 2006__          ___/s/ Rosalyn M. Chapman___
                                       ROSALYN M. CHAPMAN
13                                     UNITED STATES MAGISTRATE JUDGE

14  R&R-MDO\04-7817.MDO
    4/18/06

15

16

17

18

19

20

21

22

23

24

25

26

27

28